IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Richard Brown, Louis C. Mancuso, and Robert J. Brinson, individually and on behalf of all persons similarly situated, | ) ) ) | |
| | ) | C/A No. 2:07-CV-03852-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Charles Schwab & Co., Inc., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Battery Wealth Management, Inc. and Wayne Cassaday, | ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

This matter is before the court on plaintiffs' motion for class certification. For the

reasons set forth below, plaintiffs' motion is granted.

## I. BACKGROUND

Plaintiff Mancuso was the sole named-plaintiff in the original putative class

action on behalf of those who are alleged to have lost money in Albert Parish Jr.'s

("Parish") fraudulent investment scheme. The original action named Albert Parish, Jr.,

Parish Economics, LLC, Summerville Hard Assets, LLC, and Battery Wealth

Managment, Inc. ("Battery Wealth"), as defendants and asserted federal securities law

claims under the Securities Exchange Act of 1934 and Investment Advisers Act of 1940.

Plaintiff Mancuso amended his complaint in June 2007, abandoning his federal securities

1

law claims, naming Battery Wealth, its president, Wayne Cassaday, and Schwab as defendants, and pursuing his claims under South Carolina securities law. Schwab moved to dismiss on various grounds, and, in October 2007, the court dismissed the amended complaint without prejudice for lack of subject matter jurisdiction.

Plaintiffs Mancuso and Brown initiated the instant action in November 2007 against Schwab only. In February 2008, Schwab again moved to dismiss. The court denied that motion in May 2008. Schwab then answered the complaint, moved to bifurcate class and merits discovery (a motion the court granted), and filed a thirty-party complaint against Battery Wealth and Wayne Cassaday. Plaintiffs filed an amended complaint in August 2008, adding plaintiff Brinson as well as two more causes of action against Schwab. Schwab again moved to dismiss the class action complaint and also moved to compel arbitration and stay the proceedings. The court denied the motion in October 2008.

In March 2009, plaintiffs filed the instant motion for class certification. Plaintiffs' current operative complaint alleges, on behalf of themselves and a purported class of similarly situated persons, that they lost money in the fraudulent investment scheme operated by Parish. The four causes of action in the amended complaint are based on the South Carolina Uniform Securities Act (the "Act") and arise from Schwab's alleged role in facilitating Parish's wrongdoing. Specifically, plaintiffs contend that Schwab: (1) materially aided Parish's sale of unregistered securities (S.C. Code Ann. §§ 35-1-301, -509(g)(4)); (2) materially aided Parish's securities fraud (S.C. Code Ann. §§ 35-1-501, -509(g)(4)); (3) served as a "control person" of those liable for selling

unregistered securities (S.C. Code Ann. §§ 35-1-301, -509(g)(1)); and (4) served as a "control person" of those liable for securities fraud (S.C. Code Ann. §§ 35-1-501, -509(g)(1)).

Plaintiffs allege that Parish sold interests in at least six types of investment contracts, none of which was registered as a security under the South Carolina Uniform Securities Act. All these contracts involved an investment in some form of investment pool with the expected profits to be derived primarily from the efforts of Parish. Parish made false and misleading representations regarding the rates of return and the value of assets for the various investment pools to appease his investors and lure more investors to place their money with him. Parish used investors' money to fund his extravagant lifestyle, and, consistent with his Ponzi scheme, used later investors' money to pay earlier investors who wished to liquidate their investments.

Plaintiffs' claims center on Schwab's alleged role in enabling Parish to secure investors' money held in individual retirement accounts ("IRAs"). According to plaintiffs, Parish needed the services of a qualified custodian that would allow investors to direct their IRA investments to Parish's funds. Plaintiffs allege that Parish directed them and other investors to open accounts with Battery Wealth, a registered investment advisor partially owned by Parish and for which he served as vice president. Parish, through Battery Wealth, maintained a master account with Schwab where all plaintiffs' and putative class members' qualified retirement accounts were maintained. According to plaintiffs, Schwab opened IRA accounts for Battery Wealth clients, accepted retirement funds from these Battery Wealth clients, and transmitted account information

for these clients to Battery Wealth. Plaintiffs allege that Schwab permitted Parish, through Battery Wealth, to have power of attorney over these accounts and discretionary authority to transfer funds from these accounts in order to purchase the unregistered securities marketed and sold by Parish. Plaintiffs also say that Schwab permitted Parish to maintain on his website Schwab's account applications, transfer forms, and all other documents necessary to transfer IRA type accounts to the Battery Wealth master account held at Schwab.

According to plaintiffs, Parish would direct interested investors to download Schwab's forms from Parish's website, complete the forms, account applications, and related documents necessary to transfer qualified retirement accounts to Schwab so Parish could then transfer the funds from the Battery Wealth master account with Schwab to his own accounts in exchange for interests in one or more of the unregistered securities sold to plaintiffs and the putative class. Plaintiffs claim that Parish also created false account statements for plaintiffs and the putative class misrepresenting the value and returns of their investments. According to plaintiffs, Schwab mailed statements containing false and misleading account values to plaintiffs and the putative class without verifying (or requiring Parish to verify) the false account values.

Plaintiffs now seek to certify the following class pursuant to Federal Rule of Civil Procedure 23:

> All persons and entities who held IRA and other investment accounts with Charles Schwab & Co. ("Schwab") and invested in any Parish Investment

Vehicle through the brokerage and custodial services provided by Schwab.[1]

Pl. Br. at 1. According to plaintiffs, the class consists of at least fifty-three members

from thirteen states: Arizona, California, Colorado, Florida, Georgia, Louisiana,

Massachusetts, Missouri, New York, South Carolina, Virginia, Washington, and

Wisconsin. Plaintiffs allege that all potential class members have the same claims under

the South Carolina Uniform Securities Act against Schwab: as a statutory broker-dealer

for materially aiding the sale of illegal securities and for directly or indirectly controlling

---

[1] Plaintiffs define "Parish Investment Vehicle" as any one or more of the various pools, funds, and limited liability companies through which Parish accepted purported investments including, but not limited to, the following investment vehicles: Parish Economics LLC; four informal pools of money named for purported underlying investments, (i) the "Futures Pool" (commodities and securities future products), (ii) the "Hedged Income Pool" (bonds), (iii) the "Stock Pool" (stocks), and (iv) the "Hard Asset Pool" (hard assets such as expensive watches, jewelry, and fine art); Loan Pools represented by loan agreements whereby investors provided money to Parish to invest without restrictions; and Summerville Hard Assets LLC. Plaintiffs define "invested" as the transfer or reissue of any previously purchased or the purchase of any new promissory note, bond, share, membership, interest, income stream, receivable, payment, or any other variety of financial instrument, position, share, or stake concerning, issued by, guaranteed by, connected with, promised by, emanating from, or generated by Parish and/or a Parish Investment Vehicle. Excluded from the proposed class are Parish and Wayne Cassaday and members of their immediate families, Parish Economics, LLC, Battery Wealth, and Schwab; subsidiaries and affiliates of any of these entities, their officers, directors, and employees, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the foregoing has a controlling interest.

Schwab takes issue with plaintiffs' class definition, arguing that it is divorced from the statutory provisions in the complaint, that it is confusing, and that it is unworkable and inadequate. Schwab is correct to assert that "the definition of the class is an essential prerequisite to maintaining a class action." Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976) (citations omitted). However, the court finds that Schwab's argument in opposition to the class definition lacks merit. The court finds the class definition understandable and adequate. Regarding Schwab's assertion that the class definition is not consistent with plaintiffs' claims, the court notes that, while the class definition is adequate, plaintiffs have the seemingly difficult task of proving each and every element of their causes of action.

the sellers of such securities. Plaintiffs contend that this action meets all the

requirements of Rule 23(a), as well as those of Rule 23(b)(3).[2]

## II.  DISCUSSION

Federal Rule of Civil Procedure 23(a) provides that one or more members of a

class may sue as representative parties on behalf of all only if "(1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or

fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will fairly

and adequately protect the interests of the class."  Every class action must satisfy the four

requirements of Rule 23(a):  numerosity, typicality, commonality, and adequacy of

representation, with "the final three requirements . . . 'tend[ing] to merge.'"  Broussard v.

Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998) (quoting Gen. Tel.

---

[2]  In support of the their motion to certify the class, plaintiffs filed a declaration
from one of plaintiffs' counsel, Badge Humphries.  Schwab moved to strike the
declaration as an impermissible attempt by counsel to testify in his own case.  See Spivey
v. United States, 912 F.2d 80, 84 (4th Cir. 1990) (noting "it is elementary that counsel
may not participate both as an advocate and as a witness, absent special circumstances").
In response, plaintiffs noted they submitted the declaration as a means of conveying
information from confidential documents that the court did not have at that time.  After
the declaration was filed, the parties reached an agreement, approved by the court, to
submit the confidential documents directly to chambers, which they did.  As a result,
plaintiffs said the need for much of the declaration no longer existed and withdrew
paragraphs two and three of the declaration, directing the court's attention to the
submitted documents.  The withdrawal of paragraphs two and three appears to have
mooted Schwab's concerns about the declaration, as the remaining portions of the
declaration merely authenticate exhibits and contain information about the management
of the case as a class action, counsels' awareness of other litigation, and background
information regarding experience of counsel.  Therefore, Schwab's motion to strike is
denied as moot.

<u>Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 157, n.13 (1982)). Further, to be certified, a proposed class must satisfy not only Rule 23(a), but also one of the three sub-parts of Rule 23(b), as follows: 1) individual actions would risk inconsistent adjudications/ adjudications dispositive of non-parties; or 2) class-wide injunctive/declaratory relief is sought and appropriate; or 3) legal/factual questions, common to the proposed class members, predominate over questions affecting individual members. Fed. R. Civ. P. 23(b). Plaintiffs invoke subsection (b)(3).

"At the class certification stage, a district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." <u>Thorn v. Jefferson-Pilot Life Insurance Co.</u>, 445 F.3d 311, 319 (4th Cir. 2006) (quoting <u>Gariety v. Grant Thornton, LLP</u>, 368 F.3d 356, 365 (4th Cir. 2004)). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." <u>Id.</u> (citing <u>Falcon</u>, 457 U.S. at 160). However, the likelihood of success on the merits is not relevant to the issue of whether certification is proper. <u>Id.</u> (citations omitted). "Indeed, '[c]ertification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims.'" <u>Brown v. Nucor Corp.</u>, 576 F.3d 149, 152 (4th Cir. 2009) (quoting <u>Lilly v. Harris-Teeter Supermarket</u>, 720 F.2d 326, 332-33 (4th Cir. 1983)).

Plaintiffs have the burden of establishing that each of the requirements for a class action is satisfied. <u>Gariety</u>, 368 F.3d at 362 ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied.");

Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 146 (4th Cir. 2001) ("The party seeking

class certification bears the burden of proof.").

### A. Rule 23(a) Requirements

#### 1. Numerosity

Plaintiffs must first demonstrate that the purported class is so large that joinder of

all members is impracticable. Fed. R. Civ. P. 23(a)(1). A finding of numerosity depends

on the court's practical judgment, given the facts of the particular case. See General Tel.

Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980) ("The numerosity

requirement requires examination of the specific facts of each case and imposes no

absolute limitations."). As the Fourth Circuit has said, "'No specified number is needed

to maintain a class action.'" Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir.

1984) (quoting Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d

648, 653 (4th Cir. 1967)). While there is no bright line rule on numerosity, the

geographic dispersion of potential class members is one factor to consider. Baltimore v.

Laborers' Intern. Union of North America, 1995 WL 578084, at *1 (4th Cir. Oct. 2,

1995) (citing Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986)).

The court finds that plaintiffs have met the numerosity requirement. The potential

class consists of at least fifty-three members, a number which fits within the range of

class sizes the Fourth Circuit has deemed sufficiently numerous. See, e.g., Holsey v.

Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984) (between 46 and 60 members

sufficient); Brady, 726 F.2d at 145 (74 members sufficient); Lilly, 720 F.2d at 333 (229

members sufficient); Cypress, 375 F.2d at 653 (18 members sufficient). Moreover, the

potential class members reside in thirteen states spanning the country. Given the number of potential class members and their geographic dispersion, joinder would be impracticable.

### 2. Commonality

The commonality factor requires that the case present questions of law or fact common to the class. <u>Thorn</u>, 445 F.3d at 319. "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." <u>Id.</u> (citing Charles A. Wright et al., Federal Practice and Procedure § 1763 (3d ed. 2005)). Conversely, a question is not common if its resolution "'turns on a consideration of the individual circumstances of each class member.'" <u>Id.</u> (quoting Wright, Federal Practice and Procedure § 1763). "The common questions must be dispositive and over-shadow other issues." <u>Lienhart</u>, 255 F.3d at 146 (citation omitted).

Based on plaintiffs' claims and the documents they submitted in support of their motion, it appears to the court that many issues common to the class exist in this case. Parish operated a Ponzi scheme. Schwab's alleged role in Parish's scheme involves numerous issues common to the class. For example, common issues include whether the promissory notes were securities under the South Carolina Uniform Securities Act, whether such alleged securities were registered or exempt from registration, and whether Schwab was a "broker-dealer" under the Act. These common issues, as well as others, fall under the umbrella issue of Schwab's course of conduct in connection with Parish's investment scheme. The court finds that proof of that conduct will in large measure

involve issues common to plaintiffs and the proposed class members.

To be sure, there are probably factual differences among the plaintiffs. For example, Schwab cites the fact that the terms of the promissory notes at issue vary and reflect individualized negotiation. But this is not the type of variance among potential class members that will thwart commonality, as a difference such as this does not "overshadow" the common issues. Moreover, if after further discovery the court finds that the litigation has become mired in individualized inquiries not suitable for class treatment, the court has the option of decertifying the class. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Brown, 576 F.3d at 159-60 (recognizing district court's ability to decertify class).

One key area of disagreement between the parties that touches on both the commonality and predominance inquiries is whether the class members' claims under section 501 of the Act require proof of reliance or causation. Plaintiffs claim that Schwab "materially aided" and "controlled" Parish's violation of section 501 of the Act, subjecting Schwab to liability under section 509(g). If proof of reliance or causation is required, then individual questions of law and fact will likely overwhelm the common issues.

To determine whether causation or reliance is an element of proof, the court begins its analysis by looking at the language of the statute, bearing in mind "'the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written.'" Green-Brown v. Sealand Services, Inc., —F.3d— , 2009 WL 3465934 (4th

Cir. 2009) (quoting Estate of Cowart v. Nicklos Drilling Co ., 505 U.S. 469, 476 (1992)).

The following are pertinent provisions of the Act:

It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

(1) to employ a device, scheme, or artifice to defraud;

(2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

S.C. Code Ann. § 35-1-501.

(b) A person is liable to the purchaser if the person sells a security in violation of Sections 35-1-301 or 35-1-501 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission. . . .

S.C. Code Ann. § 35-1-509(b).

(g) The following persons are liable jointly and severally with and to the same extent as persons liable under subsections (b) through (f):

(1) a person that directly or indirectly controls a person liable under subsections (b) through (f), unless the controlling person sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist;

. . .

(4) a person that is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability under subsections (b) through (f), unless the person sustains the burden of proof that the person did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which liability is alleged to exist.

S.C. Code Ann. § 35-1-509(1), (4). The court notes that the statute does not contain the words "reliance" or "causation."

In Bradley v. Hullander, 249 S.E.2d 486, 494-95 (S.C. 1978), a case involving a previous securities statute with similar language to the current version, the Supreme Court of South Carolina held that no proof of reliance or causation was required. More recently, the Fourth Circuit addressed a Virginia statute similar to the current South Carolina law and held that the Virginia law did not have an element of reliance or causation. Dunn v. Borta, 369 F.3d 421, 433 (4th Cir. 2004). "Because the Act fails to mention reliance or causation, . . . it would be inappropriate for a court to imply them." Id. (citation omitted).

Schwab maintains that plaintiffs must prove reliance or causation because section 501 was modeled on Rule 10b-5 adopted under the Securities Exchange Act of 1934, which does require proof of reliance. See Gariety, 368 F.3d at 362 (noting that reliance is an element of a Rule 10b-5 claim). In Dunn, however, the Fourth Circuit "recognize[d] that federal courts have implied the elements of reliance and causation into claims initiated under . . . Rule 10b-5 . . . . What the federal courts have done, however, is easily distinguishable in that the federal cause of action is judicially created." Dunn, 369 F.3d at 433 n.22.[3] Consistent with the statutory text and relevant case law, the court

---

[3] Schwab cites an official comment to section 501 in support of its position. The comment provides:

1. Section 501, which was Section 101 in the 1956 Act, was modeled on Rule 10b-5 adopted under the Securities Exchange Act of 1934 and on Section 17(a) of the Securities Act of 1933. There has been significant later case development interpreting Rule 10b-5, Section 17(a), and Section 101 of the 1956 Act. *Section 501*

finds that plaintiffs' section 501 claims do not require proof of causation or reliance.

Plaintiffs' claims center on Schwab's alleged course of conduct as it relates to Parish's Ponzi scheme. Plaintiffs may or may not ultimately be able to prove their causes of action, but the facts they attempt to prove will be largely uniform for all class members. While some individual issues may exist, the common issues in this case are "dispositive" and "over-shadow" any other issues. Plaintiffs have met the commonality requirement.

### 3. Typicality

Rule 23(a)(3) provides that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Lienhart, 255 F.3d at 146 (quoting Falcon, 457 U.S. at 156). The typicality requirement blends with the commonality and adequacy of representation requirements. Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). Typicality does not require perfect alignment of the plaintiffs' and class

_____

*is not identical to either Rule 10b-5 or Section 17(a).*

S.C. Code Ann. § 35-1-501 official comment 1 (emphasis added). The court does not believe this comment, especially given the emphasized language, outweighs the opposing sources cited above. Moreover, an official comment to section 509(b) suggests that reliance or causation is not required proof: "4. Unlike the current standards on implied rights of action under Rule 10b-5, *neither causation nor reliance has been held to be an element of a private cause of action under the precursor to Section 509(b)*." S.C. Code Ann. § 35-1-509(b) official comment 4 (emphasis added).

members' claims; however, class certification is not appropriate "when the variation in claims strikes at the heart of the respective causes of action." Id. at 467. "Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." Id.

Like the named plaintiffs, the proposed class members are defrauded investors in Parish's investment scheme who have accounts at Schwab. It appears to the court that the proposed class members' claims arise from the same alleged course of conduct as the named plaintiffs' claims. Because the proposed class members' claims arise from the same alleged course of conduct by Schwab, the facts on which plaintiffs will rely to prove their claims will also prove the claims of the absent class members. Moreover, the same considerations the court noted in its "commonality" analysis apply to this issue as well—that is, the issues involved in plaintiffs' claims, in addition to satisfying the commonality factor, are also typical of those of the proposed class. The court finds that plaintiffs have met the typicality requirement.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This rule involves two components: (1) that plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation; and (2) that the plaintiffs' interests are not antagonistic to those of other class members. South Carolina Nat'l Bank v. Stone, 139 F.R.D. 325, 330 (D.S.C. 1991) (citation omitted). In making the adequacy inquiry, the court must seek to "uncover conflicts of interest between named parties and the class they seek to represent," and ask

whether class representatives "'possess the same interest and suffer the same injury' as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (citations omitted).

Schwab contends this requirement is not met because there are conflicts among class members and between named plaintiffs and class counsel. Moreover, says Schwab, the named plaintiffs do not have an adequate understanding of the action and the case is lawyer-driven. Schwab points out that plaintiffs Brown and Mancuso believe they are represented by attorney James Griffin, while plaintiff Brinson believes he is represented by the law firm of Motley Rice LLC. The court does not interpret this revelation as affecting the adequacy requirement at all. Schwab also highlights potential differences among investors in Parish's scheme, that, according to Schwab, could lead to conflicts among class members. "To defeat the adequacy requirement of Rule 23, a conflict 'must be more than merely speculative or hypothetical.'" Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003) (quoting 5 Moore's Federal Practice § 23.25[4][b][ii] (2002)). "Moreover, [f]or a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a), that conflict 'must be fundamental. It must go to the heart of the litigation.'" Id. (quoting 6 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 18:14 (4th ed. 2002)). At best, Schwab has identified potential conflicts that, consequently, do not defeat a finding of adequacy.

As to defendants' claim that this case is lawyer-driven, the Fourth Circuit has noted that, in complex cases at least, a class representative need not have extensive knowledge of the case to be an adequate representative. Gunnells, 348 F.3d at 430. This

15

case, like most securities law cases, can be considered complex. Consequently, plaintiffs need not demonstrate intricate understanding of their claims to be adequate representatives, and the court finds that plaintiffs' depositions show that they have sufficient knowledge to act as class representatives.

### B. Rule 23(b)(3) Requirements

Plaintiffs seek class certification under Rule 23(b)(3), which has two requirements: predominance and superiority. Fed. R. Civ. P. 23(b)(3). "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." Thorn, 445 F.3d at 319 (quoting Lienhart, 255 F.3d at 146 n.4). "Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" Id. (quoting Fed. R. Civ. P. 23(b)(3)) (internal citation omitted). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). The superiority inquiry tests whether a class action is "superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In considering superiority under Rule 23(b)(3) certification, the court must consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

16

difficulties in managing a class action.  Id.

The common issues already addressed by the court predominate over individual questions in this case.  The central issues in this case emanate from an alleged course of conduct by Schwab that is sufficiently uniform to merit class treatment.  One key area of focus in the predominance inquiry, as well as the commonality question, is whether plaintiffs' section 501 claims require proof of reliance or causation.  Schwab even refers to this issue as the "linchpin" of plaintiffs' motion.  Def. Br. at 8.  The Fourth Circuit has addressed the importance of this issue in other contexts, recognizing "the barriers to certifying a class action where proof of individualized reliance would have to be proved because such individual issues would then likely 'overwhelm' the common ones and preclude the court from finding satisfaction of the predominance requirement of Rule 23(b)(3)."  Gariety, 368 F.3d at 363 (quoting Basic, Inc. v. Levinson, 485 U.S. 224, 242 (1988)).  However, as the court explained when it addressed the commonality factor, plaintiffs are not required to prove reliance or causation.

Regarding superiority, the circumstances of the case favor a finding that a class action is superior to other methods of adjudication.  As the court recognized in approving a settlement related to the Parish investment scheme, the expense of individual actions would likely make such actions cost-prohibitive to many class members.  S.E.C. v. Parish, No. 2:07-00919-DCN, at *16 (D.S.C. May 12, 2008).  The court is not aware of other litigation pending against Schwab involving the same or similar claims by Parish investors.  In particular, the receiver has not brought such claims.  Regarding the desirability of concentrating the litigation in this forum, the court notes that most, if not

all, litigation related to Parish's scheme is or has been conducted in this court. Finally, the court does not foresee difficulties in managing the class action.

Schwab suggests that arbitration is a superior method of adjudicating plaintiffs' claims. While arbitration may be an alternative adjudicative method in this case, it would not be superior. The court notes that the geographic dispersion of the proposed class would likely result in numerous parallel arbitration proceedings throughout the country. This is true even if some of the arbitrations could be combined into regional groups. When compared to multiple arbitrations across the country, a class action is the superior method of adjudication.

### III.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is **GRANTED**. Pursuant to Rule 23(c)(1)(B), the court certifies the class as defined by plaintiffs and as that definition is contained in this order. The class claims are those causes of action in plaintiffs' amended complaint, as identified in this order. Pursuant to Rule 23(g), the court appoints Richard A. Harpootlian of Richard A. Harpootlian, P.A.; James Mixon Griffin of the The Law Offices of James M. Griffin; and William H. Narwold and Badge Humphries of Motley Rice LLC as class counsel. Schwab's motion to strike is **DENIED** as moot.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**December 9, 2009**
**Charleston, South Carolina**